IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| ALI ABDALLA HAMZA *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. |
| v. | ) | 20-cv-01038 LMB-JFA |
| | ) | |
| KHALIFA HIFTER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... i

INTRODUCTION.........................................................................1

ARGUMENT ...............................................................................3

   I.   This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs' Allegations Present a Non-Justiciable Political Question........................................3

   II.   The Court Should Dismiss Plaintiffs' Amended Complaint Because Mr. Hifter is Entitled to Head of State Immunity. .........................6

   III.   This Court Lacks Personal Jurisdiction Over Mr. Hifter. ...............9

   IV.   Plaintiffs Allegations Fail to State a Claim Under the TVPA. ........12

     A.   Plaintiffs Have Not Exhausted All of Their Adequate and Available Remedies in Libya ......................................13

     B.   Mr. Hifter Did Not Know or Have Reason to Know that the Alleged Conduct Would Occur.........................................14

     C.   The Killings Alleged by Plaintiffs were Neither Extrajudicial nor Deliberate...............................................17

CONCLUSION ...........................................................................18

## TABLE OF AUTHORITIES

Cases

*Ahmed v. Magan*, 2013 WL 4479077 (S.D. Ohio Aug. 20, 2013) ....................................11

*Aldana v. Del Monte Fresh Prod., N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005)............17

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002)..........9

*al-Suyid et al. v. Hifter et. al.*, Civil Case No. 1:20-cv-00170 (E.D. VA February 18, 2020) ...........................................................................................................................11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................1

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) .......................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................16

*Boniface v. Viliena*, 338 F.Supp.3d 50 (D. Mass 2018).....................................................13

*Cabello v. Fernandez–Larios*, 402 F.3d 1148 (11th Cir.2005) .........................................17

*Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002).......................13, 16

*Concert v. Luzerne Cty. Children & Youth Servs.*, 2008 WL 4753709 (M.D. Pa. Oct. 29, 2008) .............................................................................................................................12

*Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007)....................................................4

*Cort v. Ash*, 422 U.S. 66 (1975) ...........................................................................................12

*Daimler AG v. Bauman*, 571 U.S. 117 (2014).......................................................................9

*Doe v. Drummond Co., Inc.*, 782 F.3d 576 (11th Cir. 2015) .............................................10

*Elzagally, et al. v. Hifter, et al.*, Civil Case No. 1:19-cv-00853 (E.D. VA June 26, 2019) ................................................................................................................................11

*Ex parte Republic of Peru*, 318 U.S. 578 (1943) .............................................................7, 8

*Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283 (11th Cir. 2002)...................14, 15

*Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915 (2011).......................9

*Habyarimana v. Kagame*, 696 F.3d 1029 (10th Cir. 2012)................................................6

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996)..................................................15

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013)............................................10

*Lafontant v. Aristide*, 844 F.Supp. 128 (E.D. N.Y. 1994) ..................................................6

*Mamani v. Berzain*, 21 F.Supp.3d 1353 (S.D. Fla. 2014) ..........................................14, 15

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) ...................................................5, 17

*Massad v. Greaves*, 554 F.Supp.2d 163 (D. Conn. 2008) .................................................12

*Matar v. Dichter*, 500 F. Supp. 2d 284 (S.D. NY 2007)....................................................4

*Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434 (S.D. N.Y. 1974)................12

*Mujica v. AirScan Inc.*, 771 F.3d 580 (9th Cir. 2014) ......................................................10

*Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1164 (C.D. Cal. 2005) .............3

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004).........................................................8

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) ...................................................................9

*Spacil v. Crowe*, 489 F.2d 614 (1974) ...................................................................................7

*Sullivan v. State of Sao Paulo*, 122 F.2d 355 (2d Cir. 1941) .............................................7

*United States v. Williams*, 8 M.J. 506 (A.F.C.M.R. 1979)................................................16

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983).....................................6

*Warfaa v. Ali*, 33 F.Supp.3d 653 (E.D. Va. 2014) ...............................................................7

*Wartluft v. Milton Hershey Sch. and Sch. Trust*, 400 F.Supp.3d 91 (M.D. Pa. 2019) ...................................................................................................................................12

*Ye v. Zemin*, 383 F.3d 620 (7th Cir. 2004) ....................................................................6, 7

## Statutes

18 U.S.C. § 2441(b)............................................................................................................11

## Other Authorities

S. REP. NO. 102-249, at 6 (1991)......................................................................................17

Steve Holland, White House says Trump spoke to Libyan commander Haftar on Monday, Apr. 19, 2019, available at https://www.reuters.com/article/us-libya-security-trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-Monday-idUSKCN1RV0WW....................................................................................5

The Libya Observer, *Operation Dignity continues in Libya led by Haftar*, May 16, 2016, *available at* https://www.libyaobserver.ly/opinions/operation-dignity-continues-libya-led-haftar...............................................................................17

## Rules

*Fed. Rule Civ. Proc. 8(a)(2)* .............................................................................................1

## INTRODUCTION

Mr. Hifter is the commander of the Libyan National Army ("LNA"), as appointed by the duly elected Libyan House of Representatives. He is entitled to the immunity that position affords him. As he commands the LNA, Mr. Hifter was in direct communication with former President Trump about the mutual national interests, and the continuation of this case would necessarily impact the foreign policy of the U.S. Executive Branch. Additionally, Plaintiffs failed to provide proof of subject matter jurisdiction and personal jurisdiction. Plaintiffs' claims under the Alien Tort Statute ("ATS") do not sufficiently touch and concern the United States, and Plaintiffs have not proven Mr. Hifter's involvement regarding the Torture Victims Prevention Act ("TVPA").

To survive a motion to dismiss, Plaintiffs' allegations must be substantiated – their Complaint cannot merely comprise speculation and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. Rule Civ. Proc. 8(a)(2)). Plaintiffs' theory of liability in this case is only that – mere speculation and conclusory statements. Even viewing the Complaint in their favor, Plaintiffs have failed to properly establish personal jurisdiction, and have not stated a claim upon which this Court can grant relief. Therefore, this Court should dismiss Plaintiffs' Amended Complaint.

Allowing this case to proceed would require a finding that the Court has personal jurisdiction over someone who moved out of the United States many years ago and has little to no ongoing connection with United States. The Court would also have to deny Mr. Hifter head-of-state immunity, despite his approval as the head of state from the Executive. Finally, the Court would need to determine that this case would not impact U.S. foreign policy interests outside those of the Judicial Branch, which is clearly not the case given the Executive's stance on the Libyan conflict. The Executive has a keen interest in diplomatic relations in the area and has communicated with Mr. Hifter regarding that interest.

Even if the Court disagrees with the previous reasons, the Court should dismiss Plaintiffs' Complaint for failure to state a claim under the ATS and the TVPA. Plaintiffs' allegations occurred entirely in a foreign territory with no relation to the United States. Additionally, Plaintiffs' argument on Mr. Hifter's liability under the TVPA is built solely on speculation. There is no evidence that Mr. Hifter was actually involved in these allegations. Accordingly, in addition to the problems with lack of personal jurisdiction, the head-of-state immunity that the Court should afford Mr. Hifter, and the non-justiciable political questions, this Court must also dismiss the Complaint because Plaintiffs' allegations do not support a claim under the ATS or the TVPA.

## ARGUMENT

**I.      This Court Does Not Have Subject Matter Jurisdiction Because Plaintiffs' Allegations Present a Non-Justiciable Political Question.**

Mr. Hifter represented Libya under both President Obama and President Trump, and any continuation of this matter would directly interfere with the Executive and Legislative's roles in U.S. foreign policy. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plaintiffs' Opposition") misconstrues the case law in Mr. Hifter's motion to dismiss regarding non-justiciable political questions. Plaintiff argues that if this Court accepted the fact that this is a non-justiciable political question, that it would render the ATS and the TPVA obsolete. Additionally, Plaintiffs' argument rests on the fact that Mr. Hifter's actions cannot be considered an "official act" by arguing that neither Congress nor the Executive would object on political question grounds. Regardless of whether the United States objects to Mr. Hifter's alleged incidents or supports any party in this matter (although the U.S. has shown public support for Mr. Hifter), the issue is whether this litigation could interfere with the Executive or Legislative's ability to conduct U.S. foreign policy. To that question, the answer is a clear yes.

Plaintiffs' first claim is that by accepting Mr. Hifter's argument that these claims are a non-justiciable political question, it would make the ATS and the TVPA irrelevant. That is simply not true. Many courts have found ATS and TVPA claims to be precluded on political question doctrine grounds when U.S. foreign policy is at stake. *See Mujica v. Occidental Petroleum Corp.*, 381 F.Supp.2d 1164, 1195 (C.D. Cal. 2005) (where ATS and TVPA claims were brought for a bombing in Columbia, the

court dismissed the claims on the political question doctrine because the Executive had their own preferred approach to handling the situation and dealing with relations in Columbia in general, so where it involved foreign policy of which was important to the Executive, the court did not intervene.); *Matar v. Dichter*, 500 F.Supp.2d 284, 294 (S.D. NY 2007) (where a TVPA claim was brought against a high ranking official in Israel, the court held it was a political question because Israel is a strong ally of the United States in a region where diplomacy is vital and the complaint criticizes Israeli foreign policy.); *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983 (9th Cir. 2007) (the court invoked the political question doctrine regarding Palestinian ATS and TVPA claims because the United States provided aid in the conflict, making it a political decision inherently entangled with the conduct of foreign relations). The entire question hinges on whether the situation is of importance to U.S. foreign policy.

Here, the conflict in Libya is of great importance to the United States. Indeed, former President Trump voiced his support for Mr. Hifter. Although it is unclear how the current Administration will treat the situation in Libya, it is a question for the Executive. The Middle East and North African regions are areas where diplomacy is vital. Reversing course on the Executive's predetermined decision to support Mr. Hifter would question a political decision already made, express a lack of respect for the coordination of the branches of government, and potentially embarrass the Executive. Accordingly, the Court should not disrupt the allyship the United States has already established with Mr. Hifter.

Plaintiffs argue that *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) presents similar facts and that the court in *Mamani* rejected the political question argument. In *Mamani*, however, the defendants were the former president and defense minister of Bolivia.  Here, instead of involving a former government official, this case involves a current commander and head of state in Mr. Hifter, who may become the sole leader of reunified Libya. As acknowledged by both parties, Libya is presently divided between two factions, and the United States is absolutely engaged in diplomatic discussions with Mr. Hifter. This is evident at the highest level of the Executive Branch, as Mr. Hifter engaged directly with President Trump.[1] Mr. Hifter's ongoing, current role at the top of the Libyan government is precisely why the political question doctrine applies here even if it did not succeed in *Mamani*.

Furthermore, in *Mamani,* the court reasoned that "[t]he United States government notified the district court that it had received a diplomatic note from the current government of Bolivia in which the government of Bolivia formally waived any immunity that defendants might otherwise enjoy." *Id.* at 1151. That lawsuit not only involved previous government officials, but the sitting Bolivian government expressly stated that it did not request immunity for those officials. Any United States foreign policy objectives in that matter, therefore, would not be negatively

---

[1] *See, e.g.*, Steve Holland, White House says Trump spoke to Libyan commander Haftar on Monday, Apr. 19, 2019, available at https://www.reuters.com/article/us-libya-security-trump/white-house-says-trump-spoke-to-libyan-commander-haftar-on-Monday-idUSKCN1RV0WW (observing that the United States needs Mr. Hifter's "support in building democratic stability there in the region").

impacted in the same way that they would in the instant matter if this Court allows this lawsuit to proceed. Accordingly, Plaintiffs' complaint should be dismissed.

## II.  The Court Should Dismiss Plaintiffs' Amended Complaint Because Mr. Hifter is Entitled to Head of State Immunity.

The Libyan House of Representatives appointed Mr. Hifter as the commander of the LNA. Mr. Hifter's position affords him the protection of immunity. Plaintiffs argue that Mr. Hifter is not entitled to head-of-state immunity because courts rarely grant such immunity. As part of this argument, Plaintiffs implicitly concede that courts have granted head-of-state immunity in the past. The doctrine of head-of-state immunity affords absolute immunity from suit to foreign heads of state while remaining in office. See *Lafontant v. Aristide,* 844 F.Supp. 128, 131–32 (E.D. N.Y. 1994). If the Executive Branch determines that a foreign head of state is immune, courts must accept such determination. *Ye v. Zemin*, 383 F.3d 620, 626 (7th Cir. 2004). Accordingly, the Supreme Court "consistently has deferred to the decisions of the political branches—in particular, those of the Executive Branch—on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983).

The Executive Branch's determination of head-of-state immunity typically comes in the form of the Executive making a Suggestion of Immunity with the court. *See Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) ("[w]e must accept the United States' suggestion that a foreign head of state is immune from suit—even for acts committed prior to assuming office—as a conclusive determination by the political arm of the Government that the continued [exercise of jurisdiction] interferes

with the proper conduct of our foreign relations." (internal quotations marks omitted) (quoting *Ex Parte Republic of Peru*, 318 U.S. 578, 589 (1943)). Such determination that a foreign head is immune is conclusive, and courts must accept that decision. *See Ye v. Zemin*, 383 F.3d at 626.

Moreover, judicial deference to the Executive Branch in such matters is "motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is involved." *Id.*; *see also Spacil v. Crowe*, 489 F.2d 614, 619 (1974) ("[s]eparation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy."). Even where the United States does not proactively enter a matter to assert immunity, courts may request that the United States file a Statement of Interest in a pending matter. Indeed, this very Court has done precisely that in another TVPA case. *Warfaa v. Ali*, 33 F.Supp.3d 653 (E.D. Va. 2014). While the State Department declined to interfere in the two related cases to this one, the current Administration should be given the opportunity to do so.

Even though the Executive did not issue a Suggestion of Immunity in the present matter, the Court may request one from the Executive. *See Ex parte Republic of Peru*, 318 U.S. 578, 587 (1943) ("[i]ndeed, for the purpose of determining whether petitioner was entitled to the claimed immunity, the district court, in the absence of recognition of the immunity by the Department of State, had the authority to decide for itself whether all the requisites for such immunity existed."); *see also Sullivan v. State of Sao Paulo*, 122 F.2d 355, 356-357 (2d Cir. 1941) ([t]he Department of State

sent a letter to the Second Circuit declining the Second Circuit's invitation to suggest immunity, stating that the decision was best left for the court to decide; however, the letter illustrated that because of the governmental interests behind the claim, immunity would be the best course of conduct). Although the Supreme Court was addressing a question of state immunity in *Ex parte Republic of Peru*, the head of state is entitled to the same immunity as the state itself. *Republic of Austria v. Altmann*, 541 U.S. 677, 709 (2004) (Breyer, J., concurring in the opinion).

Plaintiffs argue that the Executive Branch has not voiced an opinion on this matter. They further acknowledge that on January 4, 2021, the Department of State declined an express invitation to do so in the two other civil matters pending against Mr. Hifter. The Executive Branch, however, has made its intent clear to view Mr. Hifter as the head of state. Even though the Executive has not filed a formal Suggestion of Immunity with this Court, the Court may still infer immunity. During the course of the Libyan conflict, former President Trump recognized Mr. Hifter's legitimate role on behalf of the State of Libya. Therefore, the Executive has impliedly recognized Mr. Hifter as the head of state. Additionally, this Court has not yet requested a suggestion of immunity from the Department of State in the present matter and with the present Administration. Although this Court requested such suggestion from the previous administration, there is since a new administration in place, who may formally recognize immunity. Regardless of whether the State Department formally intervenes, however, the foregoing shows that Mr. Hifter is the head of state and therefore the claims against him should be dismissed.

### III.   This Court Lacks Personal Jurisdiction Over Mr. Hifter.

Plaintiffs base their entire argument regarding personal jurisdiction on the ATS. The ATS, however, is a statute supplying supplemental jurisdiction over the subject matter, not personal jurisdiction. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 699 (2004). The Federal Rules of Civil Procedure require plaintiffs to show subject matter jurisdiction, personal jurisdiction, and venue. They are three different concepts with three different analyses.

As stated in Mr. Hifter's Motion to Dismiss (and his errata), there are two types of personal jurisdiction, general and specific. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). Specific jurisdiction is based on the conduct being connected to the state. *Id.* at 712. For specific jurisdiction, the claims need to actually arise from the defendant's contacts with the forum state. *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011). Here, the conduct occurred in Libya, so there is no specific jurisdiction. To establish general jurisdiction over the defendant, the defendant's activities in the State must have been continuous and systematic. This is a more demanding standard than necessary for specific jurisdiction. *ALS Scan, Inc.*, 293 F.3d at 712.

General jurisdiction occurs when the defendant has connections to the forum state, but these connections are not what gave rise to the suit. *Id.* Individual's affiliations with a State in which suit is brought must be so constant and pervasive "as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564

U.S. 915 (2011). Here, Plaintiffs must argue general jurisdiction because the suit's factual allegations did not arise from Mr. Hifter's alleged contact with Virginia. Mr. Hifter resides in Libya and has little to no ongoing connection to Virginia. Therefore, general jurisdiction does not apply either. Accordingly, where Plaintiffs confused a supplemental jurisdiction statute for applying personal jurisdiction and did not address either type of personal jurisdiction, Plaintiffs have failed to establish personal jurisdiction.

Addressing the rest of Plaintiff's argument regarding the ATS, the ATS does not apply here because the cause of action does not touch or concern the United States. Even if the claims touch and concern the United States, "they must do so with sufficient force to displace the presumption against extraterritorial application." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 125 (2013).

Plaintiffs allege that because Mr. Hifter has U.S. citizenship, his citizenship meets the requirements that the claims touch and concern the United States. Although U.S. citizenship is relevant, this factor is insufficient to permit jurisdiction on its own. *Doe v. Drummond Co., Inc.*, 782 F.3d 576, 595 (11th Cir. 2015). Plaintiffs still need to establish other arguments for how the claims touch and concern the United States. *See Mujica v. AirScan Inc.*, 771 F.3d 580, 594 (9th Cir. 2014) ("[i]n the absence of any adequate allegations of conduct in the United States, the only remaining nexus between Plaintiffs' claims and this country is the fact that Defendants are both U.S. corporations. That fact, without more, is not enough to

establish that the ATS claims here "touch and concern" the United States with sufficient force.").

Instead, Plaintiffs cite one case in support of citizenship being part of the basis for ATS jurisdiction. Plaintiffs' Opposition, ECF. No. 29 at 11. In *Ahmed*, the defendant tortured the plaintiff himself and was a resident of the United States. *Ahmed v. Magan*, 2013 WL 4479077 (S.D. Ohio Aug. 20, 2013). Mr. Hifter's case is distinguishable from *Ahmed* in that Mr. Hifter did not commit any of the alleged conduct himself. Instead, Plaintiffs allege that Mr. Hifter directed people under his control to commit the allegations. Further, Mr. Hifter moved out of the United States long before the allegations arose in this matter. Courts have already held (in the context of corporations) that having a mere presence in the United States, without more, does not satisfy the ATS requirements. *Balintulo v. Daimler AG*, 727 F.3d 174, 190 (2d Cir. 2013). Therefore, mere citizenship, is insufficient to satisfy the ATS requirements.

This Court has already dismissed the ATS claims in two similar cases against Mr. Hifter because the claims did not touch and concern the United States. *Elzagally, et al. v. Hifter, et al.*, Civil Case No. 1:19-cv-00853 (E.D. VA June 26, 2019); *al-Suyid et al. v. Hifter et. al.*, Civil Case No. 1:20-cv-00170 (E.D. VA February 18, 2020). It should similarly dismiss the ATS claims in this matter.

Plaintiffs finish their argument by saying that because the United States may have criminal jurisdiction over Mr. Hifter under 18 U.S.C. § 2441(b), that there should also be civil jurisdiction. First, this again does not address whether this

specific Court holds personal jurisdiction over Mr. Hifter. Second, the United States has not charged Mr. Hifter for any war crimes, leaving a question of whether the statute actually applies and confers any jurisdiction over Mr. Hifter. Third, a criminal statute does not imply a civil cause of action. A bare criminal statute with no indication of civil enforcement, does not provide an implied cause of action to a civil litigant. *Massad v. Greaves*, 554 F.Supp.2d 163, 166 (D. Conn. 2008) (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). In addition to not providing a cause of action, a criminal statute cannot be the basis of civil liability. *Wartluft v. Milton Hershey Sch. and Sch. Trust*, 400 F.Supp.3d 91, 109 (M.D. Pa. 2019) (quoting *Concert v. Luzerne Cty. Children & Youth Servs.*, 2008 WL 4753709, at *3 (M.D. Pa. Oct. 29, 2008)). Lastly, courts have already declined to provide civil jurisdiction on the basis of Title 18. *Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434, 435 (S.D. N.Y. 1974). In *Milburn*, the plaintiff relied on two criminal offenses in Title 18 to retain civil liability over the defendant. The Southern District of New York held that the provisions provided no jurisdictional basis for the plaintiff's claim and private litigants cannot sue to redress claims under this title. *Id.* Accordingly, this Court does not have jurisdiction over Mr. Hifter.

## IV.   Plaintiffs Allegations Fail to State a Claim Under the TVPA.

The facts alleged by Plaintiffs, even taken as true, do not support a claim against the Defendants under the TVPA. Accordingly, Plaintiffs' Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

### A. Plaintiffs Have Not Exhausted All of Their Adequate and Available Remedies in Libya

Defendants carry the initial burden of proof in showing that the plaintiff has not exhausted all of their adequate and available remedies. *Jean v. Dorélien*, 431 F.3d 776, 781 (11th Cir. 2005). "Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* at 782. Mr. Hifter has proven that Plaintiffs did not exhaust any remedies in their home country by showing that Plaintiffs have not filed any suits in the country or even contacted the judiciary as they admit in their Amended Complaint. Therefore, he has satisfied his burden and the burden now shifts to Plaintiffs.

Plaintiffs contend that Mr. Hifter's status and Libya's general state as a whole prevent them from exhausting all remedies in their home country. Plaintiffs cite two cases in support of their alleged inability to bring suit in their home country: *Boniface v. Viliena*, 338 F.Supp.3d 50 (D. Mass 2018) and *Chiminya Tachiona v. Mugabe*, 216 F.Supp.2d 262 (S.D.N.Y. 2002). In *Boniface*, the court held that allegations that a country's judicial system is corrupt are sufficient to show that a claimant lacks "effective domestic legal remedies." *Id.* at 66. The facts of that case, however, show that the plaintiff gave specific allegations where individuals were targeted with threats, violence, and death for participating in court proceedings. *Id.*

In *Chiminya Tachiona*, the plaintiffs showed that Zimbabwe's then-president disregarded the high court's rulings, and courts simply ignored complaints against

him. 216 F.Supp. at 275. The facts of this case are significantly different from Plaintiffs' two cited cases. Plaintiffs allege that protests turn violent and that detainees are not always granted access to legal proceedings. Plaintiffs do not allege any facts that they would be persecuted for filing a civil action other than mere speculation. Plaintiffs showed no instances where a party was actually persecuted for filing civil actions in the country. Additionally, Plaintiffs present no facts of any court in their home country being unwilling to hear a legal proceeding against Mr. Hifter, nor that Mr. Hifter has ever disregarded a court ruling. As such, Plaintiffs have failed to meet their burden of exhausting remedies due to instability in the country.

### B. Mr. Hifter Did Not Know or Have Reason to Know that the Alleged Conduct Would Occur.

Plaintiffs seek to hold Mr. Hifter liable for their allegations despite their admission that Mr. Hifter himself did not personally "pull the trigger." Plaintiffs attempt to do so under the command responsibility doctrine. While Mr. Hifter admits that individuals who do not personally engage in torture or extrajudicial killing can nonetheless be liable under the TVPA, the command responsibility doctrine is inapplicable in this matter.

The command responsibility doctrine has three prongs:

(1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes.

*Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002).

"To establish the 'superior-subordinate relationship' element, Plaintiffs must allege facts plausibly suggesting that [d]efendants had 'effective control'" over the soldiers' actions. *Mamani v. Berzain*, 21 F.Supp.3d 1353, 1376 (S.D. Fla. 2014) (quoting *Ford*, 289 F.3d at 1290). The defendant must have had "a material ability to prevent or punish criminal conduct." *Id.*

"To establish the knowledge element of command responsibility, [p]laintiffs must allege facts plausibly suggesting that [d]efendants 'knew or should have known, owing to the circumstances at the time,' that their soldiers 'had committed, were committing, or planned to commit' extrajudicial killings." *Mamani*, 21 F.Supp.3d at 1377 (quoting *Ford*, 289 F.3d at 1288). In *Mamani*, plaintiffs showed this element by presenting evidence of meetings where the defendant explicitly agreed to kill thousands of people. *Id.*

Finally, "[t]o establish the failure-to-act element of command responsibility, plaintiffs must allege facts plausibly suggesting that defendants 'failed to prevent' the extrajudicial killings or 'failed to punish' the soldiers afterward. *Id.* at 1378 (quoting *Ford* 289 F.3d at 1288). In *Mamani*, plaintiffs showed this element because defendants directly ordered the attacks, ignored pleas for a peaceful resolution, and took full responsibility for the resulting violence. *Id.* None of these elements exist to support command responsibility for Mr. Hifter.

Plaintiffs cite three cases as their support in showing that Mr. Hifter knew or should have known of the allegations. First, Plaintiffs cite *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996). *Hilao* is distinguishable from the present case. In *Hilao*,

the plaintiffs had actual evidence of the defendant's orders, allowing the conduct alleged. *Id.* at 776. Second, Plaintiffs cite *United States v. Williams*, 8 M.J. 506 (A.F.C.M.R. 1979). Plaintiffs, however, neglect to include the full citation which reads:

> **In an extreme case**, the commander may be held criminally responsible for the acts of his subordinates due in part to a lack of morale and discipline. In re Yamashita, 327 U.S. 1, 17, n. 4, 66 S.Ct. 340, 90 L.Ed. 499 (1946); Air Force Pamphlet 110-31, International Law The Conduct of Armed Conflict and Air Operations, para. 15-2b (19 November 1976); Department of the Army Pamphlet 27-161-2, International Law, Volume II, 240-43 (23 October 1962).

*Williams,* 8 M.J. at 509 n. 1 (emphasis added). Additionally, *Williams* involved U.S. military procedures under the Uniform Code of Military Justice, which is very different from the current matter as it does not involve the U.S. military and is indeed a civil lawsuit. Third, Plaintiffs cite *Chiminya Tachiona.* 216 F.Supp.2d 262. In *Chiminya Tachiona,* the defendants included the organization itself and the defendants actually endorsed the allegations. *Id.* at 270. That is likewise not the case here.

Plaintiffs carry the burden of proving that Mr. Hifter knew or should have known of the alleged conduct. Yet, unlike the cases in which Plaintiffs cite, they have provided no evidence of Mr. Hifter being the party behind the alleged conduct, other than mere speculation. A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs blame Mr. Hifter for not providing evidence of an investigation or discipline in an attempt to prove the third element of failure-to-act. Yet, Plaintiffs

must prove this element, not the other way around. Plaintiffs have not shown any evidence that Mr. Hifter condoned these allegations, and for a good reason as Mr. Hifter has never condoned any of the activity that Plaintiffs allege. Thus, Plaintiffs failed to meet their burden.

### C.  The Killings Alleged by Plaintiffs were Neither Extrajudicial nor Deliberate.

As Plaintiffs acknowledge, the TVPA does not create liability for "collateral civilian causalities resulting from legitimate military operations undertaken in a civil war." *See* S. REP. NO. 102-249, at 6 (1991). Yet, this is precisely what happened in this case.

An extrajudicial killing must be deliberate. *Mamani,* 654 F.3d at 1154-55. The claims typically recognized as violations of international law result from "widespread or systematic attack" against civilian populations. *Aldana v. Del Monte Fresh Prod., N.A., Inc.*, 416 F.3d 1242, 1247 (11th Cir. 2005) (quoting *Cabello v. Fernandez–Larios*, 402 F.3d 1148, 1161 (11th Cir.2005)). Plaintiffs desire that "Operation Dignity" or "Operation Doom" fit the definition of a widespread or systematic attack against civilians, yet that is not the case. Libya, as Plaintiffs concede, is in the middle of a civil war. One of the groups Mr. Hifter has fought is ISIS. Operation Dignity was launched as a ground and air attack on pro-Islamic militants in Benghazi.[2] The Operation was not against civilians. These allegations are a part of a larger civil war

---

[2] The Libya Observer, *Operation Dignity continues in Libya led by Haftar*, May 16, 2016, *available at* https://www.libyaobserver.ly/opinions/operation-dignity-continues-libya-led-haftar.

in which there are casualties on both sides. The conduct, as alleged, does not give rise to the TVPA.

## CONCLUSION

This case is non-justiciable due to the political question doctrine. Moreover, Mr. Hifter, as head of state, has immunity from suit. Plaintiffs failed to meet their burden that this Court has personal jurisdiction over Mr. Hifter. Plaintiffs also fail to state claims under the TVPA and ATS. For the foregoing reasons, Defendant respectfully requests that the Court grant his Motion to Dismiss.

Dated: March 18, 2021                         Respectfully submitted,

/s/ Jesse R. Binnall

Jesse R. Binnall (VSB # 79292)
Lindsay R. McKasson (VSB #96074)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
lindsay@binnall.com

*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Counsel for the Defendant*